IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

CHELSEA GILBERT, *Petitioner/Appellee,*

*v.*

MICHAEL SHERMAN, *Respondent/Appellant.*

No. 1 CA-CV 24-0630 FC

FILED 02-12-2026

Appeal from the Superior Court in Maricopa County
No. FC2024-002571
The Honorable Richard J. Hinz, Judge, *Pro Tempore*

**AFFIRMED**

COUNSEL

Michael J. Sherman, Scottsdale
*Respondent/Appellant*

Community Legal Services, Phoenix
By Carol Park Aden, Laura Oven
*Counsel for Petitioner/Appellee*

**OPINION**

Presiding Judge Brian Y. Furuya delivered the opinion of the Court, in which Judge David B. Gass and Chief Judge Randall M. Howe joined.

**F U R U Y A**, Judge:

¶1        Michael Sherman ("Father") appeals from an order of protection entered against him. He argues the superior court denied him due process and substantially restricted his ability to parent his child in prohibiting his direct contact with Chelsea Gilbert ("Mother") and her minor daughter from another relationship ("Daughter"). He further argues that the issue preclusion doctrine barred the trial court from hearing evidence about Mother's previous order of protection applications. Finally, Father argues that the trial court did not have sufficient evidence to sustain Mother's order of protection. Because Father has shown no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2        Mother and Father ended their eleven-year romantic relationship in 2024. During their relationship, they lived together with their shared minor son ("Son") and Daughter. Once separated, Mother lived with the two children in a domestic violence shelter. Father then filed family court proceedings to establish paternity, legal decision-making, parenting time, and child support. Final judgment in that case was entered after the events related to this appeal and are not part of this appeal.

¶3        Soon after the separation, Mother filed her first petition for an ex parte order of protection against Father ("First Petition"). The First Petition listed Mother, Daughter, and Son as protected persons. The court granted this first ex parte order of protection ("First Protective Order") only as to Mother and Daughter.

¶4        Father was served with the First Protective Order after a family court hearing, during which the court entered temporary orders requiring both parents to remain in their respective vehicles during parenting time exchanges, with only Son switching between Mother's car and Father's scooter. At their next parenting time exchange, Father violated the temporary orders and the First Protective Order by getting off his scooter, approaching Mother's vehicle, and opening the door ("Incident 1").

A month later, Mother contacted police about another incident with Father at Son's school science fair ("Incident 2").

¶5          After Incidents 1 and 2, Father contested the First Protective Order and requested an evidentiary hearing. At the beginning of that hearing, the court prompted Mother to amend her First Petition to include allegations about Incidents 1 and 2. After accepting the amendment in open court in Father's presence, the court informed him of his right under Rule 38(d) of the Arizona Rules of Protective Order Procedure ("Rules") to take a brief recess to review it, to continue the hearing to a later date, or, if he chose, to proceed with the hearing as scheduled. Mother testified at the hearing and attempted to admit video evidence, which the court disregarded and rejected. Expressing doubt that Mother had proved any domestic violence as "defined by the legislature," the court dismissed the First Protective Order. The court did not directly refer to either Incident 1 or 2 in its reasoning.

¶6          Mother then filed a second petition for an ex parte order of protection that included allegations concerning Incidents 1 and 2 ("Second Petition"). The court granted a new ex parte order of protection ("Second Protective Order") including Mother and Daughter as protected persons but again excluding Son. After the Second Protective Order was issued but before Father was served, Father, during another parenting exchange, again left his scooter and approached Mother's car but this time stared at Mother through the car windows without touching the car ("Incident 3"). Father was then served with the Second Protective Order and contested it, requesting an evidentiary hearing.

¶7          Just before the hearing on the Second Protective Order, Mother filed a supplement to include Incident 3. As before, the court informed Father of the amendment and his right under Rule 38(d) and he again chose to proceed immediately with the hearing. The court declined to hear new evidence of Incidents 1 and 2, instead receiving evidence and testimony about only Incident 3. However, the court said it considered Mother's allegations of Incidents 1 and 2 "to set a background basically for the nature of the parties' exchanges or contact . . . with each other at the school and determine whether that sets forth a pattern of conduct." The court affirmed the Second Protective Order, finding Incident 3 clearly violated the Temporary Orders from the family court proceedings and constituted harassment of Mother.

¶8          Father moved to reconsider, which the court denied, finding he did not provide a legal or factual basis for reconsideration. Father timely

appealed the Second Protective Order. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 12-2101(A)(1) and Rule 42(a)(2) and (b)(2).

## DISCUSSION

**¶9** We review the continuation of an order of protection for abuse of discretion. *Vanwormer v. Lopez*, 259 Ariz. 87, 89 ¶ 6 (App. 2024) (citing *Cardoso v. Soldo,* 230 Ariz. 614, 619 ¶ 16 (App. 2012)).

## I. The Court Did Not Infringe on Father's Due Process Rights.

**¶10** Father argues the court denied him due process by allowing him to proceed immediately at the evidentiary hearing on the Second Protective Order and not requiring him to take the continuance or recess, citing Rule 38(d). "Due process requires notice and an opportunity to be heard in a meaningful manner and at a meaningful time." *Ariz. Dep't of Transp. v. Ariz. Motor Vehicle, LLC*, 255 Ariz. 139, 142 ¶ 14 (App. 2023) (cleaned up). "We review constitutional questions, including compliance with due process, de novo." *Id.*

**¶11** In the context of evidentiary hearings for protective orders, the Rules ensure due process rights to notice and opportunity to be heard. Here, the Rules provide that when an amendment to a protective order petition is made at a contested hearing, the court must explain to the defendant that the defendant may: (1) continue the hearing, (2) take a brief recess, or (3) waive those options and immediately proceed with the hearing including the amendment. Ariz. R. Prot. Ord. P. 38(d)(2)(A)–(C). "We interpret court rules to effect the rule-makers' intent, using the same principles we apply when interpreting statutes." *State v. Salazar-Mercado*, 234 Ariz. 590, 592 ¶ 4 (2014). "If a rule's language is plain and unambiguous, we apply it as written without further analysis." *Id.*

**¶12** Father does not dispute that the court complied with Rule 38(d). Instead, he argues he had no opportunity to be meaningfully heard because the court did not compel him to continue the hearing or take a recess. But nothing in Rule 38(d)'s language requires the court to compel Father either to continue the hearing or to take a recess. To the contrary, Rule 38(d)(2)(C) specifically provides that the court "must offer the defendant" "an explanation of the options [] and an opportunity to waive them." And if a defendant chooses to waive other options, "then the court *must proceed* with the contested hearing on the amended petition that includes the additional allegations." Ariz. R. Prot. Ord. P. 38(d)(2)(C) (emphasis added). The court properly afforded Father his due process rights by informing him of Mother's amendment to the Second Petition and

offering him the options of continuance, a brief recess, or affirmative waiver of either option, as specified in Rule 38(d). After the court presented him with his options, it was Father who affirmatively chose to move forward with the hearing, where he was given a meaningful opportunity to be heard. Father has shown no infringement of his due process rights.

**II.     Issue Preclusion Does Not Prevent the Court from Considering Previous Orders of Protection When Issuing Subsequent Protective Orders.**

¶13     "Application of issue preclusion is an issue of law, which we review de novo." *Hancock v. O'Neil*, 253 Ariz. 509, 512 ¶ 9 (2022) (citation omitted). "Issue preclusion is a judicial doctrine that, when applicable, prevents a party from relitigating an issue of fact decided in a prior judgment." *Id.* at 512 ¶ 10. The doctrine "applies when an issue was actually litigated in a previous proceeding, there was a full and fair opportunity to litigate the issue, resolution of the issue was essential to the decision, a valid and final decision on the merits was entered, and there is common identity of parties." *Hullett v. Cousin*, 204 Ariz. 292, 297–98 ¶ 27 (2003). For issue preclusion to apply, "there must be a final judgment on the merits." *Banner Univ. Med. Ctr. Tucson Campus, LLC v. Gordon*, 252 Ariz. 264, 266 ¶ 10 (2022). However, "even in cases in which the technical requirements for the application of [issue preclusion] are met, courts do not preclude issues when special circumstances exist." *Hullett*, 204 Ariz. at 298 ¶ 28.

¶14     Here, Father argues the First Protective Order proceedings included Incidents 1 and 2, which were also alleged as supporting the Second Petition, and thus, triggered issue preclusion. For her part, Mother argues the issues were not the same and she did not receive a full and fair opportunity to litigate Incidents 1 and 2 at the first evidentiary hearing. She further argues applying issue preclusion to proceedings under A.R.S. § 13-3602 undermines public policy.

¶15     Because the court did not consider or specifically address Incidents 1 or 2 in its order dismissing the First Protective Order, whether this order qualifies as "a final judgment on the merits"—a necessary prerequisite to applying issue preclusion here, *Gordon*, 252 Ariz. at 266 ¶ 10–is debatable. But even assuming it does so qualify, we need not reach whether issue preclusion prohibited the court from considering Incidents 1 and 2 in the Second Protective Order proceeding for two reasons.

¶16     First, orders of protection may be issued "for the purpose of restraining a person from committing an act included in domestic

violence." A.R.S. § 13-3602(A). To that end, the court may consider the issuance of prior orders of protection, even if inactive, when deciding the issuance of a subsequent order. *See* A.R.S. § 13-3602(C)(5). Moreover, the Rules state that a "judicial officer must not consider the number of times a protective order has been dismissed as a basis for denying a request for protective relief." Ariz. R. Prot. Ord. P. 19. Instead, the court must make an independent determination whether it has reasonable cause to issue a protective order "*[e]ach time a plaintiff petitions* for protective relief." *Id.* (emphasis added). Thus, this statutory authority forms a special circumstance allowing courts to consider events alleged in prior applications in hearings for orders of protection, even if a full and fair adjudication of those prior incidents was reached. *See Hullett*, 204 Ariz. at 298 ¶ 28.

¶17 Second, even assuming the court was precluded from basing the Second Protective Order on Incidents 1 and 2, the court said it considered the supplement alleging Incident 3 only when confirming the Second Protective Order. The court acknowledged that Incidents 1 and 2 could contextualize the facts surrounding Incident 3, but it expressly did not base the Second Protective Order on those events, and they were not relitigated as Father argues. The court's consideration of Incidents 1 and 2 in this manner—as auxiliary evidence to interpret whether Incident 3 constituted harassment—was permissible. *See* A.R.S. § 13-3602(E).

¶18 Father further argues the court erred in granting the Second Protective Order because the Second Petition alleged only Incidents 1 and 2, which he claims the court was precluded from considering. This argument is likewise unavailing. The court could permit Mother's Incident 3 supplement and consider Incident 3 even assuming, arguendo, the original pleading was defective because of issue preclusion. *See* Ariz. R. Prot. Ord. P. 38(d); Ariz. R. Fam. L. P. 28(d) (A court may permit supplementation even though the original pleading is defective in stating a claim for relief or defense); *accord* Ariz. R. Prot. Ord. P. 2 (to the extent not inconsistent, Family Law rules apply "to protective order matters heard in conjunction with pending family law cases"). Father has shown no error.

III.  **The Evidence Presented at the Contested Hearing for the Second Order of Protection Sufficiently Supports the Court's Findings and Constitutes Sufficient Evidence of Harassment.**

¶19 Father argues the evidence presented at the contested hearing for the Second Protective Order was insufficient to affirm the ex parte protection order. Not so.

¶20 The court may issue an order of protection if it finds reasonable cause to believe the defendant has harassed or may harass the protected person. Ariz. R. Prot. Ord. P. 3(e). *See* A.R.S. §§ 13-3602(E), 13-2921, 13-3601(A), and 13-3624(C). A defendant is entitled to a hearing to contest an order of protection. A.R.S. § 13-3602(L). If the plaintiff then shows by a preponderance of the evidence that "there is reasonable cause to believe . . . [t]he defendant has committed an act of domestic violence within the past year," the court must affirm the ex parte order of protection. A.R.S. § 13-3602(E).

¶21 Because Mother and Daughter have previously lived with Father, harassment between them qualifies as domestic violence. A.R.S. §§ 13-3601(A) and 13-3602(A). Harassment includes when the defendant knowingly "[c]ontacts or causes a communication" or "continues to follow another person in . . . a public place after being asked . . . to desist[.]" A.R.S. § 13-2921(A). Those actions constitute harassment when "directed at a specific person and . . . would cause a reasonable person to be seriously alarmed, annoyed, humiliated or mentally distressed and the conduct in fact seriously alarms, annoys, humiliates or mentally distresses the person." A.R.S. § 13-2921(E). As factfinder, the court has discretion to weigh and assess conflicting evidence and credibility, and we defer to its determinations. *Vanwormer*, 259 Ariz. at 90 ¶ 9; *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347 ¶ 13 (App. 1998).

¶22 The court heard evidence of Incident 3. Mother testified that she found Father's behavior intimidating and was alarmed and worried about what he could do. Although Father testified that this incident was harmless, Mother testified that she was in fact seriously annoyed, alarmed, or harassed. Also, the court heard evidence of Mother's mental health diagnoses and her history of similar interactions with Father, and Father was on notice of Mother's likely reaction to his presence. In email correspondence early in their separation, Father said he "underst[ood] that [he is] a major trigger of [Mother's] condition" and would comply with the now imposed Second Protective Order writing, "I will be committed to keeping my distance and give you your space. I will not interact with you at all unless it is absolutely necessary." As we previously noted, the court could consider evidence of Incidents 1 and 2 at the very least to provide context for the reasonableness of Mother's alarm as to Incident 3. Given this evidence, the court determined Father's behavior during Incident 3 was unreasonable, constituting harassment.

¶23 Mother's testimony, together with other evidence substantiating the harassment claims, substantially supports the court's

findings. Father asks us to reweigh this evidence on appeal, which we cannot do. *See Gutierrez,* 193 Ariz. at 347 ¶ 13*; Hurd v. Hurd,* 223 Ariz. 48, 52 ¶ 16 (App. 2009).

## CONCLUSION

**¶24**        We affirm.

**¶25**        Father and Mother each request an award of attorneys' fees and costs under Rule 39. In our discretion, we decline to award Mother her attorneys' fees but grant her award of her costs on appeal upon compliance with Arizona Rules of Civil Appellate Procedure 21. *See* A.R.S. § 13-3602(T); Rule 39(a)–(b).



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:        JR